UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JERRY SHERLEY, individually and on behalf of all others similarly situated,<br><br>v.<br><br>MUSKOGEE COUNTY EMS. | Case No. 6:23-cv-00241-JFH-GLJ<br><br>Collective Action (29 U.S.C. § 216(b)) |

**SHERLEY'S UNOPPOSED MOTION FOR FINAL CERTIFICATION AND APPROVAL OF SETTLEMENT**

**1. Summary.**

This Court facilitated notice to the Parties' agreed FLSA "Settlement Collective." Doc. 33. By the end of the process, seventy-eight members of Settlement Collective filed consents ("Opt-in Plaintiffs"). The Opt-in Plaintiffs uniformly agreed to the Settlement Agreement ("Agreement") which, if approved, will provide them with a substantial recovery on their FLSA claims. Those members of the Settlement Collective who elected not to become Opt-In Plaintiffs retain all their rights and are not impacted by the settlement (positively or negatively). Because there are no impediments to proceeding collectively and the Agreement is fair and reasonable, Sherley requests the Court grant final certification and approve the Agreement.

**2. Procedural Background.**

Sherley sued MCEMS for failing to pay overtime at 1.5 times the regular rate of pay. Doc. 2, Complaint. He alleged MCEMS should have included certain shift differential payments in the "regular rate" for the purposes of calculating overtime. *See* 29 U.S.C. § 207(a). Had these payments been included, MCEMS would have owed overtime at a higher rate than it paid. *See, e.g., Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1041 (5th Cir. 2010) (employer violated the FLSA by designating a portion of the employee's regular pay as "per diem" and only paying overtime based on the portion of the regular pay labeled as wages); *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1252 (10th Cir. 2017)

("An employee's regular rate shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, subject to eight exemptions.") (cleaned up); 29 U.S.C. § 207(e).

MCEMS denied liability, claiming the shift differential payments "qualify as overtime premiums[.]" Doc. 9 at 5, ¶ 7. Overtime premiums are expressly excluded from an employee's regular rate of pay under 29 U.S.C. § 207(e). *Id.* With the issues joined, the parties agreed to a settlement to resolve their differences and avoid the burden, risk, and expense of further litigation. Under the settlement's terms, each member of the Settlement Collective would be offered the opportunity to participate in the settlement (or not) as he saw fit. *See* Ex. 32-1, Settlement Agreement ("Agreement") at 1, § 5.

On November 21, 2024, the Court conditionally certified a Settlement Collective defined as "any EMT employed by MCEMS who was paid by the hour . . . plus shift differential pay and who worked more than 40 hours in a workweek during the period from July 18, 2020 to October 31, 2023." Doc. 33 at 1. In accordance with the Parties' Agreement, Simpluris (the settlement administrator) mailed, emailed, and texted notice to the 130 members of the Settlement Collective. Ex. 1, Moulton Decl. at ¶ 5. To the extent possible, Sherley's attorneys manned telephones and email in real-time, ultimately responding to dozens of inquiries and requests for assistance with the claims process (often at odd hours consistent with the work schedules of EMTs). *Id.* at ¶ 6.

The 40-day opt-in period ran its course and 78 individuals filed consents to join and accept the proposed settlement. Moulton Decl. at ¶ 7. Of the proposed $192,800 allocated to the Settlement Collective, $160,860.52, or 83% has been claimed. About 38% of those that did not claim were owed less than $100. *Id.* at ¶ 8.

3. **The Court should grant final certification of the collective.**

The FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated."

29 U.S.C. § 216(b). The FLSA is silent as to what standards and procedures courts should use to determine whether a putative collective is "similarly situated" and thus allow notice to be sent to the potential members. *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001).

Courts in the Tenth Circuit, however, use the two-stage methodology used by most courts. *West v. Bam! Pizza Mgmt., Inc.*, No. 122CV00209DHUJHR, 2023 WL 346309, at *2 (D.N.M. Jan. 20, 2023). The first, or notice, stage "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *West.,* 2023 WL 346309, at *2 (citing *Thiessen*, 267 F.3d at 1102). This is a "lenient standard" that "typically results in conditional certification of a representative class." *Id.* "At the conclusion of discovery (often prompted by a motion to decertify), the court then makes a second determination, utilizing a stricter standard of similarly situated." *Valencia v. Armada Skilled Home Care of NM LLC*, No. 118CV01071DHUJFR, 2023 WL 1993869, at *2 (D.N.M. Feb. 14, 2023) (cleaned up). During this second-stage analysis, the court assesses several factors, including the "disparate factual and employment settings of the individual plaintiffs," "the various defenses available to defendants which appear to be individual to each plaintiff," and "fairness and procedural considerations." *Id.*

Sherley meets the standard for final certification. There are no "disparate and factual employment settings" that would preclude collective treatment because all the members of the Settlement Collective were subject to MCEMS's policy of failing to include shift "differential" pay when calculating overtime rates. *See* Doc. 32 at 9-11 (demonstrating MCEMS's policy through declarations, pay stubs, employment verification letters, and class payroll data). There are no individualized defenses. *See, e.g.*, Doc. 9, Answer at 5-6. Nor are there any fairness or procedural considerations that would prevent collective treatment.

Perhaps even more important here, MCEMS does not oppose final certification. Doc. 32-1 at 3, ¶ 7 ("The Parties stipulate and agree that … the requisites for establishing collective action

certification under the FLSA … are met."). Rather, collective treatment is preferable because "requiring [Plaintiffs] to present their claims individually would be inefficient and likely expensive, and the facts and circumstances underlying their claims are largely the same." *Valencia*, 2023 WL 1993869, at *5. Accordingly, the Court should grant final certification of the Settlement Collective.

### 4. The Court should approve the Parties' Agreement.

Sherley seeks (and MCEMS does not oppose) judicial approval of the Agreement. Doc. 27 at 1 (ordering Sherley to file a motion for approval of the settlement). The Agreement represents a fair and reasonable compromise of a *bona fide* factual dispute concerning the legality of MCEMS's compensation practice during the relevant period. FLSA collective claims may be compromised after the court reviews and approves a settlement in an action for back wages under 29 U.S.C. § 216(b). *Pliego v. Los Arcos Mexican Restaurants, Inc.,* 313 F.R.D. 117, 128 (D. Colo. 2016) (citing *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982)).

Courts are split as to whether judicial approval of FLSA settlement is required. *See, e.g.*, *Berner v. PharMerica Logistics Servs., LLC*, No. 3:23-CV-00142-CRS, 2024 WL 5147039, at *3 (W.D. Ky. Dec. 17, 2024) (finding courts do not have authority to approve FLSA settlements and a motion requesting approval should not be brought). The Tenth Circuit has never required an "extensive review of every FLSA settlement[,]" and district courts within the Tenth Circuit are split as to whether judicial approval is necessary at all. *Lawson v. Procare CRS, Inc.*, No. 18-CV-00248-TCK-JFJ, 2019 WL 112781, at *2 (N.D. Okla. Jan. 4, 2019). One recent case noted: "[N]either the Tenth Circuit nor the Supreme Court has [held approval is necessary], and the relevant statutory text plainly does not require judicial approval." *Hawthorne, et al. v. Podium Corp.*, No. 2:24-cv-00196-HCN at ECF 15 (D. Utah Apr. 22, 2024) (holding approval is unnecessary and treating the parties' motion to approve as a stipulation of dismissal under Rule 41(a)(ii)) (citing *Martinez v. Back Bone Bullies Ltd.*, 2022 WL 782782, at *11-12 (D.

4

Colo. Mar. 15, 2022); *Carroll v. Schlumberger Tech. Corp.*, 2021 WL 4245370, at *1 (D. Colo. Sept. 16, 2021).

In FLSA settlements where "not all affected parties are directly before the Court," some courts review the settlements to ensure it represents a fair and reasonable resolution. *Lawson,* 2019 WL 112781 at *2-3. In this case, however, all the affected parties have been given notice and all those who wish to participate are directly before the Court. Therefore, the "absent" class member concerns raised by the Court Sherley filed his first motion for approval are no longer present. *Sherley v. Muskogee Cnty. EMS,* No. 23-CV-241-JFH-GLJ, 2024 WL 2720447, at *2 (E.D. Okla. May 23, 2024)  ("The Court finds that review of the proposed settlement agreement is appropriate … because notice has not yet been made … thus, not all the affected parties are before the court; nor have they had the opportunity to participate in the decision to settle their claims.").

Because the notice and opt-in process is complete, the only individuals that will benefit from, and be bound by, the Agreement are the existing Opt-in Plaintiffs who agreed to do so. *See* Doc. 32-1 at 12. They acknowledged they "want to accept [their] estimated settlement of $ [amount]" and agreed to release their wage and hour claims. *Id.* Each of them further signed the statement:

> I hereby consent to join the collective action lawsuit, Case No. 6:23-cv-00241-JFH-GLJ, *Sherley et al. v. Muskogee County EMS*. I acknowledge that I am represented by BRUCKNER BURCH PLLC ("Class Counsel"). I agree that I will be bound by the terms of the Settlement Agreement and Release signed by the Named Plaintiff in this case as well as the terms of the Acknowledgment and Release set forth above.

Docs. 34-41 (Notices of Filing Consents).

### A. The standard for approval of FLSA settlements.

When evaluating FLSA settlements, courts should ensure the settlement provides adequate compensation to the employees and that it does not frustrate the FLSA's policy rationales. *Wiggens v. Team One Logistics, LLC*, No. 23-1096-DDC-ADM, 2023 WL 8452135, at *3 (D. Kan. Dec. 6, 2023).

Courts often examine the following factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Velasco v. Jason's Premier Pumping Serv., LLC,* No. 21-CV-1812-CMA-GPG, 2023 WL 1421647, at *2 (D. Colo. Jan. 11, 2023), *adopted Velasco v. Jason's Premier Pumping Servs.*, LLC, No. 21-CV-01812-CMA-GPG, 2023 WL 1338689 (D. Colo. Jan. 31, 2023) (citing *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)). "If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation." *Hoffman v. Poulsen Pizza LLC,* No. 15-2640-DDC-KGG, 2017 WL 25386, at *2 (D. Kan. Jan. 3, 2017) (*citing Lynn's Food Stores, Inc.*, 679 F.2d at 1354).

The Court should note "there is a 'strong presumption in favor of finding a settlement fair[.]'" *Felix v. Thai Basil at Thornton, Inc.*, Civ. A. No. 14-cv-02567-MSK-CBS, 2015 WL 2265177, at *2 (D. Colo. May 6, 2015); *Solis*, 2014 WL 4357486 at *3 (noting a "presumption of fairness attaches to the proposed settlement"); *Davis v. Crilly*, 292 F. Supp. 3d 1167, 1173 (D. Colo. 2018) ("There is a strong presumption in favor of finding a settlement fair."). The fact a "settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Domingue v. Sun Elec. & Instrumentation, Inc.*, Case No. 09-682, 2010 WL 1688793, at *1 (M.D. La. Apr. 26, 2010). "Normally, a settlement is approved where it is the result of contentious arm's-length negotiations, which were undertaken in good faith by counsel and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief." *Felix v. Thai Basil at Thornton, Inc.*, No. 14-CV-02567-MSK-CBS, 2015 WL 2265177, at *2 (D. Colo. May 6, 2015) (cleaned up).

Here, the Agreement was negotiated by attorneys who have been vigorously prosecuting and/or defending these and similar claims for decades. Moulton Decl. at ¶¶ 1-4, 10-11. All parties are represented by lawyers with considerable experience in prosecuting, defending, and settling federal and state wage-and-hour claims, and who were well informed as to the facts and circumstances after conducting discovery and analyzing relevant payroll records. *See Cotton v. Hinton*, 559 F. 2d 1326, 1330 (5th Cir. 1977) (holding that the court is "entitled to rely upon the judgment of experienced counsel for the parties" in assessing a settlement and "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel"); *Shaw v. CAS, Inc.*, No. 5:17-cv-142, 2018 WL 3621050, at *3 (S.D. Tex. Jan. 31, 2018) (preliminarily approving settlement where counsel believed settlement was reasonable and adequate based on "comprehensive knowledge of the facts and legal issues"); *Felix,* 2015 WL 2265177, at *3 ("When a settlement agreement has been the subject of arm's-length bargaining, with class counsel in a position to evaluate accurately the chances of the class prevailing if the case went to trial and where no objections are raised by any of the affected parties, there is a strong presumption in favor of the settlement."); *Liger v. New Orleans Hornets NBA Ltd. P'ship*, No. 05-1969, 2009 WL 2856246, at *4 (E.D. La. Aug. 28, 2009) ("The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a . . . settlement.") (internal citations omitted); *see also Austin v. Pa. Dep't of Corrs.*, 876 F.Supp. 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 667 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Indus., Inc.,* 604 F. Supp. 446, 452 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

## B. The proposed agreement resolves bona fide disputes.

An FLSA settlement should be approved if it is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Begay v. Epoch Behav. Healthcare, Inc.*, No. 1:15-CV-00110-WJ-LF, 2016 WL 6823515, at *2 (D.N.M. Mar. 24, 2016), *adopted,* No. 1:15-CV-00110-WJ-LF, 2016 WL 7198712 (D.N.M. Apr. 12, 2016). "A settlement entered into in an adversarial context where both sides are represented by counsel throughout litigation is more likely to reflect a reasonable compromise of disputed issues." *Id.* (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1353, 1355).

"The threshold for establishing whether a bona fide dispute exists between the parties is a low one met where the parties are in disagreement about the wages to be paid and liability of the issues." *Netzel v. W. Shore Grp., Inc.*, No. 16-CV-2552 (RHK/LIB), 2017 WL 1906955, at *1 (D. Minn. May 8, 2017). "The requirement of an adversarial posture between parties to a settlement agreement operates as a guarantee that employers cannot profit by coercing employees into waiving their rights, and then dressing that invalid waiver of the FLSA's protections as a valid settlement of a legal claim." *Sims v. Hous. Auth. of City of El Paso*, No. EP-10-CV-109-KC, 2011 WL 3862194, at *6 (W.D. Tex. Sept. 1, 2011).

### i. Bona fide disputes exist as to whether shift differential pay should be included in the regular rate.

The core dispute is whether MCEMS should have included its shift differential payments in its employees' "regular rate." For example, Sherley alleges MCEMS paid additional amounts for working certain shifts, such as driving a "hyper truck" ambulance, which were part of his regular, expected weekly compensation. Doc. 32 at 9-11. According to Sherley, these amounts should have been included in the overtime pay calculation under 29 U.S.C. § 207(e). MCEMS alleges the payments qualify as overtime premium payments for working shifts beyond normal working hours that are excludable from the overtime calculation under § 207(e)(5) and can offset owed overtime under

§ 207(h). *See* Doc. 9, Answer at 5, ¶ 6-7. Judicial resolution of this issue would require additional, perhaps lengthy litigation with its attendant costs and risk.

### ii. Bona fide disputes exist over MCEMS's good faith defense.

The Parties further dispute whether MCEMS acted in good faith when it failed to include shift differential payments in the regular rate. *See, e.g.*, Doc. 9 at 6, ¶¶ 11-12. An award of liquidated damages under the FLSA is mandatory unless the employer can show good faith and reasonable grounds for believing that it was not in violation of the FLSA. *Solis v. Supporting Hands, LLC*, No. CIV 11-0406 JB/KBM, 2013 WL 1897822, at *24 (D.N.M. Apr. 30, 2013); 29 U.S.C. § 260. Good faith requires the employer attempt to ascertain the FLSA's requirements. *Id.* The employer must also proceed under an objectively reasonable, although mistaken, interpretation of the statute that it subjectively believed met the FLSA's requirements. *Id.* MCEMS asserts it acted in good faith because it believed the payments were overtime premiums which was a lawful way to ensure the EMTs received the same amount of compensation after making changes to its payroll practices a few years ago.

### iii. Bona fide disputes exist over whether MCEMS acted willfully.

The Parties also disagree as to whether Sherley could satisfy his burden to demonstrate that MCEMS acted willfully, which affects whether he and the proposed FLSA Settlement Collective could recover compensation for two (2) years or three (3) years. *See* 29 U.S.C. § 255. An employer commits a willful violation if it "knew or showed reckless disregard for the matter of whether its conduct violated the [FLSA]." *Mumby v. Pure Energy Servs. (USA), Inc.*, No. 09-CV-77-J, 2009 WL 10700277, at *3 (D. Wyo. Dec. 2, 2009). This standard is a "mixed question of law and fact, but … the factual issues predominate." *Id.* MCEMS disputes willfulness, claiming that any violation was not intentional or reckless.

### iv. The Agreement is a compromise of several complex, bona fide disputes.

The Parties fully analyzed the pertinent issues and assessed the strengths and weaknesses of the claims and defenses. The Agreement was reached after arm's-length negotiations. The Parties worked to resolve various complex, disputed issues, including the alleged shift-differential pay and regular rate issue, good faith, and willfulness. Had the Parties not settled, there would undoubtedly be extensive future work to come, including pretrial motions, trial, and possibly appeals. Accordingly, the Parties engaged in significant work, recognized the risks if this case were not settled, and appreciated that settlement represents a compromise in favor of certainty. The Agreement is a reasonable compromise of these bona fide disputes. Moulton Decl. at ¶ 12.

Finally, both Sherley and Class Counsel believe the Agreement is in the best interest of both Sherley and the Opt-in Plaintiffs. Doc. 32-2 at ¶ 12; Doc. 32-3 at ¶ 11; Moulton Decl. at ¶ 12. The Agreement before the Court is the result of a *bona fide* and contested dispute where serious questions of fact exist that place the ultimate outcome of the litigation in doubt. Moulton Decl. at ¶ 13. Without the Parties' willingness to engage in settlement discussions, this case would have not been resolved. *Id.*

### C. While reasonable, approval of the negotiated attorneys' fee is not required.

As noted above, there is some dispute as to whether settlement approval is required at all in FLSA cases. *Berner*, 2024 WL 5147039, at *3. But regardless of that split, "any authority for judicial approval of FLSA settlements in 29 U.S.C. § 216 does not extend to review of settled attorney fees[.]" *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019); *Bernardez v. Firstsource Sols. USA, LLC*, No. 3:17-CV-613-RGJ, 2022 WL 1156972, at *6 (W.D. Ky. Apr. 19, 2022) (same). After all, the FLSA treats the "merits of an FLSA claim"—what the employees themselves recover—and attorney's fees "as distinct." *Barbee*, 927 F.3d at 1027 (citing 29 U.S.C. § 216(b)). Thus, "regardless of whether

we read the statute as requiring approval for FLSA settlements, we do not read it as requiring approval of settled attorney fees." *Id.*

Here, the Agreement provides separately for negotiated attorney's fees of $140,000 in fees and $7,200 in costs. Ex. 32-1 at 6. However, Class Counsel agreed to reduce the fees to $135,793 to cover the increased costs of administering the settlement under the two-step process preferred by the Court instead of the single step process proposed by the Parties. Moulton Decl. at ¶ 14.

The Agreement only impacts the members of the FLSA Collective that affirmatively chose to accept it. Those who chose not to accept it, or were uncontactable, or who otherwise did not return a consent form, retain all their rights (having paid nothing out of pocket or out of their potential recovery). And those who choose to participate will receive **more than 200%** of their unpaid wages after applying the FLSA's default 2-year statute of limitations (73% without applying limitations). *See* 29 U.S.C. §§ 255 (default limitations period is two years) & 257 (limitations not tolled until consent is filed). Moulton Decl. at ¶ 15. And participating workers owe **nothing** to their attorneys from their recovery. Given the substantial recovery obtained for the Settlement Collective, "any skepticism the Court might have about approving [fees] is overcome by the benefit provided to Plaintiff and the collective," as well as the "admonition that courts should give a certain amount of deference when reviewing agreed attorney's fees in FLSA settlements." *Webb v. S. Aluminum Mfg. Acquisition, Inc.*, No. 1:19-CV-1059, 2022 WL 801559, at *4 (W.D. Ark. Mar. 15, 2022).

In the Tenth Circuit, the customary fee award is typically derived from a percentage of the settlement fund recovered. *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995); *see also Chieftain Royalty Co. v. SM Energy Co.*, 2021 WL 11691282, at *4 (W.D. Okla. Apr. 27, 2021) (collecting cases). "The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund is less subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when class counsel is retained

11

on a contingent fee basis, as in this case." *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 484 (10th Cir. 1998); *see also Rounds v. FourPoint Energy, LLC*, No. CIV-20-00052-P, 2022 WL 16843240, at *3 (W.D. Okla. Aug. 23, 2022); *Braver v. Northstar Alarm Services, LLC*, No. CIV-17-0383-F, 2020 WL 6468227, *1 (W.D. Okla. Nov. 3, 2020); *Lucken Family Ltd. Partnership, LLP v. Ultra Resources, Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *2 (D. Colo. Dec. 22, 2010); *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993). In common fund cases, utilizing the percentage method to calculate attorney fee awards is the standard. *See Gottlieb v. Barry*, 43 F.3d 474, 482–83 (10th Cir. 1994). The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel "as to their expected recovery," and encouraging early settlement before substantial fees and expenses have been accumulated. *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010).

Counsel's separately negotiated fee, after voluntarily reducing it, is 38.8%. As courts have noted, the "customary contingency fee" in FLSA collective action settlements such as this is approximately 30-40 percent. *See, e.g., Oates v. Kinder Morgan Energy Partners, L.P.,* No. CIV-19-1171-SLP, 2024 WL 4926664, at *2 (W.D. Okla. June 27, 2024) (approving fee award of 35% of the gross settlement amount); *McKinley v. Mid-Continent Well Logging Serv., Inc.*, No. CIV-14-649-M, ECF 48 (W.D. Okla. Mar. 2, 2016) (approving fee award of 40% of gross settlement fund); *Cimarron Pipeline Construction, Inc. v. National Council on Compensation*, Case Nos. CIV 89–822–T, CIV 89–1186–T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) (noting "[f]ees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."); *Whittington v. Taco Bell of Am., Inc.*, No. 10-CV-01884-KMT-MEH, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (approving award of attorney's fees of 39% of total settlement and noting "this [request] is within the normal range for a contingent fee award" in FLSA collective actions); *Lucken Family Ltd. Partnership*, 2010 WL 5387559 at *5-6 ("The customary fee awarded to class counsel in a common fund

settlement is approximately one third of the total economic benefit bestowed on the class."); *see also White Family Minerals, LLC v. EOG Resources, Inc.*, No. 19-cv-409-KEW, 2021 WL 6138867, at *6 (E.D. Okla. Nov. 12, 2021) (approving 40% of gross settlement award in oil and gas class action); *Chieftain Royalty Co. v. XTO Energy Inc.*, No. CIV-11-29-KEW, 2018 WL 2296588, at *7 (E.D. Okla. Mar. 27, 2018) (same).

**5. The Service Payments are reasonable.**

The Agreement provides $5,000 service payments to Sherley and Amanda Moorhead to acknowledge their time, effort, and risk expended in advancing this litigation and achieving a successful settlement. Doc. 32-1 at 7, § 13(a). Such awards are common in actions where plaintiffs put off the resolution of their own claims for the benefit of others. *See, e.g., Pliego v. Lose Arcos Mexican Restaurants,* 313 F.R.D. 117, 131 (D. Colo. 2016). Both Sherley's and Moorheads services were essential. Moulton Decl. at ¶ 16. They possessed key documents and were of great assistance to advancing this litigation to an early and successful resolution. *Id.* It is unlikely that the Plaintiffs would have had as successful outcome as quickly they did, without their assistance and taking on the risk that future employers may look unfavorably upon them. *Id.*.

The Service Payments are well within acceptable amounts. *See, e.g., Oates,* 2024 WL 4926664, at *1 (approving incentive award of $7,500); *Slaughter v. Sykes Enterprises, Inc.*, No. 17-CV-02038-KLM, 2019 WL 529512, at *8 (D. Colo. Feb. 11, 2019) (approving $10,000 to the named plaintiff; and $20,00 total to 6 of the opt-in plaintiffs for the work that they performed "to advance the litigation and benefit the Collective"); *Aragon v. Clear Water Prods. LLC*, No. 15-CV-02821-PAB-STV, 2018 WL 6620724, at *8 (D. Colo. Dec. 18, 2018) (approving $7,500 to the named plaintiff and $2,750 each to 4 of the opt-in plaintiffs); *Shaulis v. Falcon Subsidiary LLC*, No. 18-CV-00293-CMA-NYW, 2018 WL 4620388, at *1 (D. Colo. Sept. 26, 2018) (approving service awards totaling $15,000 split between two plaintiffs); *Waggoner v. U.S. Bancorp*, No. 14 Civ. 1626, 2016 WL 7474408, at *4 (N.D. Ohio Dec. 29,

13

2016) (approving service payments of $10,000 each for the named plaintiff and discovery opt-in plaintiffs); *Heibel v. U.S. Bank Nat'l Ass'n*, No. 11 Civ. 00593, 2014 WL 12591848, at *2 (S.D. Ohio May 21, 2014) (approving $5,000 each to a group of six named plaintiffs and $2,000 each to a group of 15 class representative plaintiffs); *Kritzer v. Safelite Sols., LLC*, No. 2:10-CV-0729, 2012 WL 1945144, at *8 (S.D. Ohio May 30, 2012) (approving $15,000 to the named plaintiffs in FLSA settlement); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (approving named plaintiffs $6,000 and $4,000 for their service to the FLSA collective). Sherley's and Moorhead's efforts in advancing this litigation to successful completion merits the modest $5,000 Service Payments.

**6. Conclusion.**

The Agreement is fair, reasonable, adequate, and in the best interests of the Parties and the FLSA Settlement Collective. It was reached following months of discovery, analysis, and negotiation by experienced wage and hour counsel. Because of the various defenses asserted by MCEMS and the possibility that MCEMS may successfully have eliminated or limited Sherley's claims, including those related to willfulness, liquidated damages, and unpaid overtime, the Agreement represents a fair compromise of *bona fide* disputes. Moreover, given the strong likelihood of risky and expensive continued litigation, a compromise prevents all parties from incurring the additional costs and delay associated with trial and possible appeal.

The Parties hereby request the Court: (1) grant final certification of the FLSA Collective; (2) approve the Parties' Agreement; (3) dismiss this case with prejudice; and (4) retain jurisdiction for purposes of ensuring compliance with the Agreement and any related Court orders.

Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: **/s/ David I. Moulton**
_____
David I. Moulton
Texas Bar No. 24051093
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Telephone: (713) 877-8788
Telecopier: (713) 877-8065
rburch@brucknerburch.com
dmoulton@brucknerburch.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

On February 3, 2025, I served this document on all registered parties via the Court's ECF system.

**/s/ David I. Moulton**
_____
David I. Moulton

## CERTIFICATE OF CONFERENCE

MCEMS does not oppose this motion.

**/s/ David I. Moulton**
_____
David I. Moulton