## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

**JERRY SHERLEY,**

                    **Plaintiff,**

**v.**

                    **Case No. 23-CV-241-JFH-GLJ**

**MUSKOGEE COUNTY EMS,**

                    **Defendant.**

## <u>OPINION AND ORDER</u>

Before the Court is the Unopposed Motion for Final Certification and Settlement Approval ("Motion"), filed by Plaintiff Jerry Sherley ("Plaintiff").  Dkt. No. 43.  For the reasons set forth below, the Motion is GRANTED.

## BACKGROUND

Defendant Muskogee County EMS ("MCEMS") is an emergency medical service operating in Muskogee County.  Dkt. No. 32 at 9.  It employs EMTs to respond to emergencies and provide medical transportation.  *Id.*  Plaintiff filed this Fair Labor Standards Act ("FLSA") collective action, seeking to recover unpaid overtime he alleges Defendant Muskogee County EMS ("MCEMS") owes its paramedics, drivers, and dispatchers (collectively "EMTs").  Dkt. No. 2 at 1-4.  Plaintiff alleges that between July 18, 2020 and October 31, 2023, MCEMS failed to include EMTs' shift differential pay in the rate for overtime pay, which resulted in less overtime pay than required by the FLSA.  *Id.* at 3.  The parties have reached a negotiated resolution.  Dkt. No. 32-1.  Their settlement agreement (the "Settlement Agreement") defines the Settlement Class to include EMTs employed by MCEMS who received an hourly wage plus shift differential pay and who

worked more than 40 hours in a workweek between July 18, 2020 to October 31, 2023.  Dkt. No. 32 at 9; Dkt. No. 32-1 at 4.

## DISCUSSION

### I.    Final Certification of the Settlement Class

An FLSA collective action may be maintained "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).   An FLSA action does not become a collective action unless other plaintiffs affirmatively opt in, which is accomplished by giving consent in writing.  *Id.*; *Shepheard v. Aramark Unif. & Career Apparel, LLC*, No. 15-7823-DDC-GEB, 2016 WL 5817074, at *1 (D. Kan. Oct. 5, 2016). The Court makes the "similarly situated" determination in two stages:  (1) an initial certification at the notice stage, which uses a "fairly lenient standard to determine whether plaintiffs are similarly situated for purposes of sending notice to putative class members" and (2) a final certification utilizing a "stricter standard[.]" *Prim*, 2017 WL 3641844, at *1 (citing *Thiessen v. GE Cap. Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001)).

At the initial notice stage, "the question is simply whether [the plaintiff] asserts 'substantial allegations that the putative class members were together the victims of a single policy or plan.' " *Foust v. CPI Sec. Servs., Inc.*, No. CIV-16-1447-R, 2017 WL 2271482, at *2 (W.D. Okla. May 23, 2017) (quoting *Thiessen*, 267 F.3d at 1102.  Conditional certification "does not produce a class with an independent legal status, or join additional parties to the action." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013).  "The sole consequence of conditional certification is the sending of court-approved written notice to employees . . . who in turn become parties to a collective action only by filing written consent with the court, § 216(b)." *Id.*  At the final certification stage, the Court considers the following factors:  "(1) the disparate factual and

2

employment settings of individual plaintiffs; (2) various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Prim*, 2017 WL 3641844, at *2.

Here, the standard for final certification is met. As to the first factor, there are no "disparate and factual employment settings" that would preclude collective treatment because all the members of the Settlement Class were subject to MCEMS's policy of failing to include shift "differential" pay when calculating overtime rates. Dkt. No. 32 at 9-11. Therefore, this factor weighs in favor of final certification. As to the second factor, because MCEMC has not asserted any individualized defenses, this factor also weighs in favor of final certification. Dkt. No. 9 at 5-6. Finally, as to the third factor, both permitting members of the Settlement Class to pool their resources and encouraging settlement weigh in favor of final certification.

Further, MCEMS does not oppose final certification. Dkt. No. 32-1 at 3. Rather, collective treatment is preferable because requiring members of the Settlement Class "to present their claims individually would be inefficient and likely expensive, and the facts and circumstances underlying their claims are largely the same." *Valencia*, 2023 WL 1993869, at *5. Accordingly, the Court grants final certification of the Settlement Class.

## II.    Approval of the Settlement Agreement

In considering whether to approve an FLSA settlement, the Court must determine whether: "(1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned[,] and (3) the proposed settlement contains an award of reasonable attorney's fees." *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982). The Court addresses each of these factors below.

3

### A.  Bona Fide Dispute

Before approving an FLSA settlement, the parties must submit sufficient information for the Court to conclude that a bona fide dispute exists.  *Id.*  Here, the Court notes that Plaintiff brought suit under the FLSA for unpaid overtime wages and the parties are represented by attorneys experienced in litigating FLSA claims.  This suggests "the settlement is more likely to reflect a reasonable compromise of disputed issues."  *See Lynn's Foods*, 679 F.2d at 1354.  Further, the parties have identified a number of disputed issues, including:  (1) whether shift differential payments should have been included in EMTs' "regular rate" or overtime pay calculation; (2) whether MCEMS acted in good faith in including the shift differentials in EMTs' regular rate instead of overtime pay calculations; and (3) whether MCEMS acted willfully, which impacts the statute of limitations of the FLSA action, under 29 U.S.C. § 255.  Dkt. No. 43 at 8-9.  Based on the record and the issues identified by the parties, the Court is satisfied that bona fide disputes exist.

### B.  Fair and Equitable Terms

To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales.  *Coronado v. Flowers Foods, Inc.*, No. CV 16-350 JCH/KK, 2022 WL 2048481, at *2 (D.N.M. June 7, 2022).  Courts considering both individual and collective settlements under the FLSA turn to the factors for evaluating the fairness of a class action settlement. *See, e.g.*, *Dail v. George A. Arab Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005) (evaluating individual action); *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714 at 721 (E.D. La. 2008) (evaluating collective action).  The Tenth Circuit considers the following factors when deciding whether to approve a class action settlement under Fed. R. Civ. P. 23(e):  (1) whether the parties fairly and honestly negotiated the settlement; (2) whether

4

serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

Here, under the Settlement Agreement, MCEMS agrees to pay the gross settlement amount of $350,000 (including attorney's fees and costs, as well as administration expenses) for up to 130 putative class members. Dkt. No. 24-1 at 3-4. This amount includes: (1) $192,800 in individual settlement awards to the putative class members (which represents 73% of each member's unpaid wages); (2) $140,000 in attorneys' fees (counsel has agreed to reduce to the fees to $135,793, which represents approximately 38.8% of the Gross Settlement Amount); (3) up to $7,200 in attorney's costs; and (4) $10,000 in administration expenses. Dkt. No. 24-1 at 3, 6-7, 15-16; Dkt. No. 43 at 11-12. At the expiration of the notice period, 78 EMTs opted in to the settlement (collectively the "Opt-in Plaintiffs". Dkt. No. 15, 19, 34-42.

In his unopposed motion for settlement approval, Plaintiff states that: (1) the parties fully analyzed the pertinent issues and assessed the strengths and weaknesses of the claims and defenses; (2) the Agreement was reached after arm's-length negotiations; (3) the parties worked to resolve various complex, disputed issues, including the alleged shift-differential pay and regular rate issue, good faith, and willfulness; (4) the parties recognize that had they not reached an agreement, there would undoubtedly be extensive litigation of Plaintiff's claims, including pretrial motions, trial, and possibly appeals; (5) the parties recognize the risks to each if this case were not settled and appreciate that settlement represents a compromise in favor of certainty; and (6) the parties believe that the Agreement is in their best interests and in the best interests of the opt-in Plaintiffs. Dkt. No. 43 at 10. Having considered the record, the terms of Settlement Agreement, and the

representations set out in Plaintiff's unopposed motion, the Court finds that the Settlement Agreement is fair and equitable.

## C. Reasonable Attorney Fees

The FLSA requires the parties to a settlement agreement to include an award of reasonable attorney's fees and the costs of the action. 29 U.S.C. § 216(b); *see also McCaffrey*, 2011 WL 32436, at *2. The Court has discretion to determine the amount and reasonableness of the fee, but the FLSA fee award nevertheless is mandatory. *Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311, 2015 WL 4920292, at *3 (D. Kan. Aug. 18, 2015) (citations omitted).

Here, Plaintiff argues that it is unnecessary for the Court to review the attorneys' fee because his counsels' fees were separately negotiated from the FLSA claims settlement. Dkt. No. 45 at 1-2 (citing *Barbee v. Big River Steel, LLC*, 927 F.3d 1024 (8th Cir. 2019)). In *Barbee*, the Eighth Circuit held that "any authority for judicial approval of FLSA settlements . . . does not extend to review of settled attorney fees" because the wording of 29 U.S.C. § 216(b), which allows "fees 'in addition to any judgment awarded,' [treats] the merits of an FLSA claim and the attorney fees as distinct." *Barbee*, 927 F.3d at 1027. The Court is unaware of, and Plaintiff does not cite, any relevant Tenth Circuit cases applying the Eighth Circuit's decision or equivalent rule.[1] In fact, district courts in this Circuit have acknowledged *Barbee*, but nevertheless proceeded with their analysis to determine whether the separately negotiated attorney fees and expenses were reasonable. *See Wisneski v. Belmont Management Co., Inc.*, No. 2:19-cv-2523-JAR, 2021 WL 1999094, at *2 n.17 (D. Kan. May 19, 2021); *Robertson v. Whitman Consulting Org., Inc.*, No.

---

[1] Plaintiff cites *Bernardez v. Firstsource Sols. USA, LLC*, No. 3:17-CV-613-RGJ, 2022 WL 1156972, at *6 (W.D. Ky. Apr. 19, 2022), in which the United States District Court for the Western District of Kentucky applied *Barbee*. Dkt. No. 45 at 2. However, this unpublished decision from a district court within the Sixth Circuit is neither binding nor persuasive here.

19-CV-2508-RM-KLM, 2021 WL 4947349, at *3–4 (D. Colo. Oct. 25, 2021), *report and recommendation adopted sub nom. Roberton v. Whitman Consulting Org., Inc.*, No. 19-CV02508-RM-KLM, 2021 WL 5826410 (D. Colo. Dec. 8, 2021).

Even if the Court were to adopt the Eighth Circuit's rule from *Barbee*, it would not be applicable here. Even within the Eighth Circuit, district courts have refrained from applying *Barbee* in cases where "the attorney's fees were calculated as a percentage of settlement funds rather than negotiated separately." *Johnson v. Himagine Sols., Inc.*, No. 4:20-cv-00574-SPM, 2021 WL 2634669, at *6 n.3 (E.D. Mo. June 25, 2021). Attorneys' fees that are calculated as a percentage of settlement funds are "necessarily intertwined with the [P]laintiffs' settlement." *Del Toro v. Centene Mgmt. Co., LLC*, No. 4:19-cv-02635-JAR, 2021 WL 1784328, at *2 (E.D. Mo. May 5, 2021) (alteration in original) (citation omitted); *see also Hebert v. Chesapeake Operating, Inc.*, 2:17-cv-852, 2019 WL 4574509, at *3 (S. D. Ohio Sept. 20, 2019).

Here, Plaintiff claims that the parties "separately negotiated" for the payment of attorneys' fees and costs Dkt. No. 45 at 1. However, he also acknowledges that the fee award was based on a 40% contingency fee agreement. *Id.* at 6; Dkt. No. 45-1 at 4. Because the separately negotiated amount was merely an agreed on percentage of the Gross Settlement amount, counsel's attorneys' fee award is "necessarily intertwined" with the Settlement Agreement [Dkt. No. 32-1]. *See Robertson*, No. 19-CV-2508-RM-KLM, 2021 WL 4947349, at *4 (D. Colo. Oct. 25, 2021). Further, the damages awards for the Settlement Class appear to be pro rata allocation of the Net Settlement Amount, which is the leftover amount after deducting: (1) counsel's attorneys' fees, (2) litigation costs; and (3) administration service fees. *See* Dkt. No. 32-1 at 3-4. Taken together, this "illustrates a typical common fund settlement with fees part of the global resolution, not separately negotiated categories of recovery." *Hebert*, 2019 WL 4574509, at *3. For these

reasons, the Court will assess whether an award of $135,793 (which represents approximately 38.8% of the Gross Settlement Amount) and $7,200 in costs is reasonable.

The Tenth Circuit has held that the factors articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974), should be considered in assessing the reasonableness of attorneys' fees in common fund cases:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee—this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-55 (10th Cir.1998); *see also Anderson v. Merit*, 2009 WL 3378526 at *2 (D.Colo. Oct. 20, 2009)  The weight to be given to each of the *Johnson* factors varies from case to case, and each factor is not always applicable in every case. In a common fund case, the greatest weight should be given to the monetary results achieved for the benefit of the class—this factor is often "decisive." *Brown*, 838 F.2d at 456.

In this case, counsel negotiated a 40% contingency fee, which was later reduced to approximately 38.8%.  Dkt. No. 45 at 6; Dkt. No. 45-1 at 4.  The case involved a complex issue— whether the FLSA required MCEMS to include shift differential pay in calculating overtime payments.  Dkt. No. 45-1 at 2.  Counsel is an experienced attorney, specializing in wage and hour disputes.  *Id.*  at 1-2.  Counsel expended a significant amount of time on the case, which required: (1) researching and vetting the claims and preparing the suit for filing; (2) reviewing and analyzing voluminous discovery including payroll records, timesheets, and personnel files; (3) creating and comparing a damages model with the defense; (4) negotiating the settlement over a period of months; (5) obtaining conditional certification of the collective; (6) fielding communications from

members of the collective during the notice period; and (7) seeking final approval of the settlement, including supplemental briefing on the reasonableness of attorneys' fees. *Id.* at 2-3. Based on the amount of the settlement and the number of class members opting into the settlement, members of the class will receive more that 200% of their unpaid wages. *Id.* at 3. This outcome is of particular weight.

Based on the Court's careful consideration of the Motion [Dkt. No. 43], Counsel's supplement [Dkt. No. 45], and the Settlement Agreement [Dkt. No. 32-1], the Court finds that the attorney's fees and costs requested are reasonable. totaling $135,793, plus $7,200[2] in litigation costs, to Counsel is reasonable.

IT IS THEREFORE ORDERED that:

1. The Unopposed Motion for Final Certification and Settlement Approval [Dkt. No. 43 is GRANTED.

2. Payment of $135,793 in attorneys' fees plus $7,200 in litigation costs is reasonable.

3. This case is DISMISSED with prejudice.

4. The Court will retain jurisdiction for purposes of ensuring compliance with the Agreement and any related Court orders.

Dated this 23rd day of June 2025.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE

---

[2]   Although Counsel's supplemental brief on reasonable attorney's fees requests $11,407 in litigation costs [Dkt. No. 45 at 6], the amount of costs requested in the Unopposed Motion for Final Certification and Settlement Approval [Dkt. No. 43 at 3, 11] and the maximum amount of costs allowable under the parties' Settlement Agreement is $7,200.